UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER MCKAY,<br><br>    Plaintiff,<br><br>    v.<br><br>SAZERAC COMPANY, INC.,<br><br>    Defendant. | Case No. 23-cv-00522-EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS, AND GRANTING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE**<br><br>Docket Nos. 15-16 |

Plaintiff Christopher McKay, on behalf of a putative class, filed suit against Defendant Sazerac Company, Inc. ("Sazerac") for Sazerac's labeling and marketing of its mini bottles of Fireball malt beverages, which allegedly deceive customers into purchasing Fireball Malt by using labeling, wording, and packaging similar to that of Fireball Whisky.  Docket No. 1 ("Compl."). Specifically, Mr. McKay claims (1) violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, et seq., (2) violation of the False Advertising, Business and Professions Code ("FAL") § 17500, et seq., (3) common law fraud, deceit, and/or misrepresentation, (4) unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, et seq., and (5) unjust enrichment.  *Id.*

Now pending before the Court is Sazerac's Motion to Dismiss under Rule 12(b)(6). Docket No. 15 ("MTD").  For the following reasons, the Court **DENIES** Sazerac's Motion to Dismiss.  The Court **GRANTS** Sazerac's Request for Judicial Notice.

///

///

///

# I.   BACKGROUND

A.   Factual Background

   1.   The Products

Sazerac sells a variety of alcoholic drinks, including its longstanding whisky product ("Fireball Whisky") and its new malt liquor product ("Fireball Malt"). A side-by-side comparison photo of the mini bottles of these products are provided in Mr. McKay's complaint. Compl. ¶ 17.



Fireball Whisky has been sold since 1989 and is the fifth best-selling spirit in the United States. Compl. ¶¶ 12–13. It is a Canadian whisky—a distilled spirit—with added cinnamon syrup and sweeteners, and results in 66 proof (33%) alcohol by volume (ABV). Compl. ¶¶ 12, 15. Fireball Whisky is sold in a variety of sizes, from 1.75L bottles to 50ML mini bottles. Compl. ¶ 12. The label reads "Cinnamon Whisky." Compl. ¶ 17. As with all liquors, Fireball Whisky may be sold in liquor stores licensed to sell distilled spirits.

Fireball Malt debuted in 2020. Compl. ¶ 15. It is a malt or wine-based beverage with

1   added cinnamon syrup, sweeteners, and whisky flavors, and results in 33 proof (16.5%) alcohol by

2   volume (ABV).  Compl. ¶ 15.  A malt beverage is fermented to create a neutral base to which

3   flavors and colors may be added.  Compl. ¶ 15.  It contains no whisky.  Compl. ¶ 15.  Fireball

4   Malt is only sold in 50ML mini bottles.  Compl. ¶ 15.  The label reads "Cinnamon" and, in smaller

5   font, "Malt Beverage With Natural Whisky & Other Flavors and Carmel Color."  Compl. ¶¶ 17,

6   19.  Fireball Malt may be sold in retail locations licensed to sell beer and malt beverages, such as

7   gas stations and convenience stores.

   2. Mr. McKay

   Over the last three years, Mr. McKay has purchased Fireball Malt on multiple occasions from Speedway gas stations in Mendocino County, California.  Compl. ¶ 22.  Based on the labeling of the bottles, he falsely believed that he was purchasing a full single serving of Fireball Whisky, when he was instead purchasing a one-sixth serving of Fireball Malt.  Compl. ¶ 24. Because the value of Fireball Malt is materially less than its represented value (as the same volume of Fireball Whisky), Mr. McKay explains that he would have paid less for the Fireball Malt or not bought it at all had he not been misled by the label and packaging.  Compl. ¶ 26.

B. Procedural History

   Mr. McKay filed his complaint on February 3, 2023.  Docket No. 1 ("Compl.").  He alleges that Sazerac's marketing of its mini bottles of Fireball malt beverages deceived him into purchasing Fireball Malt by using labeling, wording, and packaging similar to that of Fireball Whisky.  Docket No. 1 ("Compl.").  Specifically, Mr. McKay claims (1) violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, et seq., (2) violation of the False Advertising, Business and Professions Code ("FAL") § 17500, et seq., (3) common law fraud, deceit, and/or misrepresentation, (4) unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, et seq., and (5) unjust enrichment.  *Id.*

   On March 21, 2023, Sazerac filed a Motion to Dismiss and a Request for Judicial Notice. Docket No. 15 ("MTD"); Docket No. 16 ("RJN").  Mr. McKay filed an opposition.  Docket No. 21.  Sazerac filed a reply.  Docket No. 22.

## II. REQUEST FOR JUDICIAL NOTICE

A.   Legal Standard (Rule 201(b))

The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court will not take judicial notice of those facts. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of 'matters of public record' . . . [b]ut a court may not take judicial notice of a fact that is 'subject to reasonable dispute.'") (first quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); then quoting Fed. R. Evid. 201(b)), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

B.   Discussion

As a preliminary matter, the Court grants Sazerac's request for judicial notice. Courts may take judicial notice of a public record that is not subject to reasonable dispute. *See* Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Courts may take judicial notice of all "evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011). "In the context of food labels, courts regularly take judicial notice of product labels when those product labels form the basis of the relevant causes of action." *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, No. 18-CV-06664-BLF, 2019 WL 2515919, at *2 (N.D. Cal. June 18, 2019).

In support of its motion to dismiss, Sazerac requests that the Court take judicial notice of five documents, each of which are explicitly or implicitly referred to in the complaint. RJN at 2.

Exhibit A is the image of the front label of a bottle of Fireball Cinnamon malt beverage. Docket No. 15-3 Exh. A. Exhibit B is an image of the back label of a bottle of Fireball Cinnamon malt beverage. Docket No. 15-4 Exh. B. Exhibit C is an image of the front label of a bottle of Fireball Whisky. Docket No. 15-5 Exh. C. These images are shown as follows:

4


  

**EXHIBIT A**        **EXHIBIT B**        **EXHIBIT C**

Exhibits A and C are clear depictions of the images located in the complaint as a blurry photograph, Compl. ¶ 17, and are thus proper for judicial notice. Exhibit B is a fuller depiction of the product in question and is thus proper for judicial notice. *See Prescott v. Nestle USA, Inc.*, No. 19-CV-07471-BLF, 2020 WL 3035798, at *2 (N.D. Cal. June 4, 2020) (taking "judicial notice of images that better display the packaging in question"). Both are incorporated by reference and central to the claims in the complaint. Mr. McKay object on the grounds that these exhibits are irrelevant, as they display the 3.4-oz version of the products, not the 1.7-oz versions that he referenced and included in his complaint. Opp. to MTD at 5 n.2. Because it appears that the labels on the two sizes are the same and Mr. McKay does not provide any argument or evidence to the contrary, the Court takes judicial notice of these exhibits. Mr. McKay does not dispute the authenticity of these exhibits.

Exhibit D contains copies of Certificates of Label Approval for Fireball Cinnamon malt beverage issued by the Alcohol and Tobacco Tax and Trade Bureau of the United States Department of the Treasury ("TTB"). Docket No. 15-6 Exh. D. Exhibit E is a screenshot of the portion of the website of the California Department of Alcoholic Beverage Control pertaining to

1  License Types 20 and 21.[1]  Docket No. 15-7 Exh. E.  Both documents are matters of public record

2  memorialized as "records and reports of administrative bodies" and "posted on a governmental

3  website" and thus proper for judicial notice.  *Mack v. S. Bay Beer Distributors, Inc.*, 798 F.2d

4  1279, 1282 (9th Cir. 1986) (citing *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209

5  F.2d 380, 385 (9th Cir. 1953)); *Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 727 n.3 (9th

6  Cir. 2015).  Mr. McKay objects that the exhibits should not be admitted for the truth of the matters

7  asserted therein.  Opp. to MTD at 6 n.2.  The Court may take judicial notice of these exhibits and

8  recognize the existence of a COLA and California's license types but does not—and need not—

9  treat the contents as dispositive factual evidence that the Fireball Malt label is approved.  *See*

10 *Coal. for a Sustainable Delta v. Fed. Emergency Mgmt. Agency*, 812 F. Supp. 2d 1089, 1093 (E.D.

11 Cal. 2011) ("However, judicially noticed documents may be considered only for limited purposes.

12 Public records 'are subject to judicial notice under [Rule] 201 to prove their existence and content,

13 but not for the truth of the matters asserted therein. This means that factual information asserted in

14 these document[s] or the meeting cannot be used to create or resolve disputed issues of material

15 fact.'").

16     Thus, the Court **GRANTS** Sazerac's request for judicial notice as noted.

### III.  MOTION TO DISMISS

A.  Legal Standard (Rule 12(b)(6))

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the

---

[1] *Available at* https://www.abc.ca.gov/licensing/license-types/.

6

pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

B.  Safe Harbor Doctrine

First, Sazerac argues that its use of the Fireball Malt label is protected from CLRA, UCL, and FAL claims by the "safe harbor" doctrine. MTD at 3–4. The Supreme Court of California has created a "safe harbor" from unfair competition claims under the auspice of legislative preemption: "[a]lthough the unfair competition law's scope is sweeping, it is not unlimited. Courts may not simply impose their own notions of the day as to what is fair or unfair. Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182, 973 P.2d 527, 541 (1999). Here, Sazerac asserts that the Alcohol and Tobacco Tax and Trade Bureau ("TTB")'s exclusive jurisdiction over regulating alcoholic beverage labels—and its grant of the certificate of label approval ("COLA") covering Fireball Malt—gives Sazerac a safe harbor that precludes Mr. McKay's CLRA, UCL, and FAL claims. MTD at 3–4.

For the reasons stated below, the regulations, 27 C.F.R. § 7.21(a) and 27 C.F.R. § 7.122 invoked by Sazerac do not provide a safe harbor with respect to Sazerac's label for Fireball Malt. The labeling of alcoholic beverage products is subject to TTB regulations requiring

7

1    manufacturers obtain a COLA for the malt beverage.  *See* 27 C.F.R. § 7.21(a) ("[A] brewer or
2    wholesaler bottling malt beverages must obtain a certificate of label approval (COLA) covering
3    the malt beverages from TTB prior to bottling the malt beverages or removing the malt beverages
4    from the premises where they were bottled.").  Sazerac pinpoints two subsections that it argues
5    provide a safe harbor: 27 C.F.R. § 7.122(a) (stating that a COLA may not be issued if the label
6    contains "any statement or representation, irrespective of falsity, that is misleading to consumers
7    as to the age, origin, identity, or other characteristics of the malt beverage.") and 27 C.F.R. §
8    7.122(b)(1) (stating that a COLA may not be issued if any label statement "directly creates a
9    misleading impression or if it does so indirectly through ambiguity, omission, inference, or by the
10   addition of irrelevant, scientific, or technical matter").  However, neither of these provisions
11   clearly permit the type of representations made by Sazerac in the Fireball Malt label.  And neither
12   provision directly conflict with Mr. McKay's claims.

13       To rely on a safe harbor, Sazerac's conduct must be expressly "within the scope" of the
14   harbor-granting statute.  *Cel-Tech*, 20 Cal. 4th at 182–83; *see, e.g.*, *Ebner v. Fresh, Inc.*, 838 F.3d
15   958, 964 (9th Cir. 2016) (finding that a claim challenging a label's accurate net weight statement
16   is barred by the safe harbor doctrine because the manufacturer complied with federal and state law
17   requiring a net weight statement, but finding that a claim challenging the omission of a
18   supplemental statement is not barred by the safe harbor doctrine because "there is no law
19   expressly permitting the omission of supplemental statements").  This means that "[t]o forestall an
20   action under the unfair competition law, another provision must *actually 'bar'* the action or *clearly*
21   *permit* the conduct."  *Id.* at 183 (emphasis added).  It is true that the Fireball Malt label may
22   satisfy some of the requirements set forth by the TTB regulations.  *See, e.g.*, 27 C.F.R. §
23   7.53(a)(2) (requiring that the minimum type size for mandatory information be "at least one
24   millimeter in height" for contains of one-half pint or less); 27 C.F.R. § 7.147 (requiring disclosure
25   of "fermentable or non-fermentable flavoring materials added to the malt beverage").  But these
26   TTB regulations merely permit certain labeling restrictions and the inclusion of certain
27   disclosures; they do not "clearly" permit any and all labels that are ambiguous and substantially
28   similar to other products.  Plaintiff's claims here do not turn solely on Sazerac's failure to use font

of the minimum size required by § 753(a)(2) or disclose added flavoring as required by § 7.147. Rather, it is the combination of the labeling and appearance that creates confusion between the whisky and malt bottles. Plaintiff's claims are predicated on a comparative analysis of the two products in question. Importantly, there is no evidence that the TTB regulations address any sort of comparative analysis with other labels, or test for consumer confusion. Nor has Sazerac pointed to TTB procedures which permit a third party to challenge the label's approval.[2] Moreover, § 7.122 clearly *forbids* misleading labeling. That the TTB issued a COLA does not create a safe harbor. The challenged aspects of Sazerac's labeling and packaging are not actually barred or clearly permitted by TTB regulations of TTB's issuance of a COLA. "[I]f the Legislature did not consider that activity in those circumstances, the failure to proscribe it in a specific provision does not prevent a judicial determination that it is unfair under the unfair competition law." *Id.* at 183. This case stands in contrast to cases that have permitted a safe harbor based on statutes that *clearly permit* specific conduct. *See, e.g.*, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1165 (9th Cir. 2012) (finding safe harbor for claims challenging disclosure of credit card annual fee where "the statute and the regulations clearly permit, and indeed require with equal force, the disclosure of any annual fee in an application for a credit card"); *Dinan v. SanDisk LLC*, 844 F. App'x 978, 980 (9th Cir. 2021) (finding safe harbor for claims challenging prefix definitions where the statute "makes clear that the metric prefix 'giga' and symbol 'G' refer to the decimal definition [and] using NIST definitions is permitted by state and federal statute").

Moreover, a COLA issued by the TTB does not carry the force of law. Opp. to MTD at 9–10. Although the Ninth Circuit has not opined on whether the TTB's COLA process carries the force of law such that it creates a safe harbor, the Court doubts it does. Safe harboring-granting legislation must be the product of a "formal deliberative process akin to notice-and-comment

---

[2] This contrasts with procedures before PTO which permit challenges to patents and patent and trademark applications. *See* 35 U.S.C. § 314 (inter partes review of patents); 35 U.S.C. § 324 (post-grant review of patents); 37 C.F.R. § 2.149 (letters of protest against pending trademark applications); 37 C.F.R. § 2.101(b) (oppositions against pending trademark applications); 37 C.F.R. § 2.111(c)(1) (protests against trademark registrations).

rulemaking or adjudication," not the result of informal agency action. *Hofmann v. Fifth Generation, Inc.*, No. 14-CV-2569 JM JLB, 2015 WL 5440330, at *7 (S.D. Cal. Mar. 18, 2015); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1076 (E.D. Cal. 2010). Judge Seeborg has addressed the issue. "On one hand, some courts have reasoned that because alcoholic beverage distributors must obtain a COLA and the TTB has exclusive jurisdiction to regulate labels on alcoholic beverages, approved labels must be permitted under federal law. . . . under *United States v. Mead*, '[it] is fair to assume that Congress contemplates administrative action with the effect of law when it provides for a relatively formal administrative procedure tending to foster the fairness and deliberation.'" *Kay v. Copper Cane, LLC*, 549 F. Supp. 3d 1014, 1022 (N.D. Cal. 2021) (Seeborg, J.) (citing *Cruz v. Anheuser-Busch, LLC*, 2015 WL 3561536, at *6 (C.D. Cal. June 3, 2015), *aff'd on other grounds*, 682 Fed. Appx. 583 (9th Cir. 2017). "On the other hand, courts which have closely analyzed *Mead* have concluded COLAs are too 'informal' to be considered regulations having the force of law. Compared to the 'rigorous' approval process for prescription-drug labels, the TTB process 'hinges on self reporting' and reflects only the representations made to it by the distributor, not an endorsement of those claims." *Id.* (internal citations omitted). The Court concurs with Judge Seeborg. It remains true that "the TTB does not engage in notice-and-comment rulemaking before processing COLAs and it is reasonable to assume the TTB issues many COLAs each year." *Id.* at 1023. COLAs only "bind . . . the government and the beverage distributor." *Id.* Thus, because the TTB's COLA process is not entitled to the force of law, this is a second reason why TTB regulations do not provide a safe harbor from Plaintiff's CLRA, UCL, and FAL claims.

C. <u>Fraud Claim</u>

Sazerac next argues that Mr. McKay's complaint fails to meet the heightened pleading standards for fraud claims. MTD at 4–5. The elements of fraud include: "(a) misrepresentation (false representation, concealment, or nondisclosure ); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (citing *Engalla v. Permanente Med. Group, Inc.*, 15 Cal.4th 951, 974, 64 Cal.Rptr.2d 843, 938 P.2d 903 (Cal. 1997)). Under

10

Federal Rule of Civil Procedure Rule 9(b), claims sounding in fraud must allege the circumstances with particularity: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Proc. 9(b).

"To properly plead fraud with particularity under Rule 9(b), 'a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (citing *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)). Mr. McKay's complaint clearly alleges the who, what, when, where, and how of Sazerac's misleading labeling. As to the "who," the complaint pinpoints that the misconduct was done by Sazerac, who "manufactures, distributes, markets, advertises, and sells alcohol a number of alcoholic beverages" including Fireball Whisky and Fireball Malt. Compl. ¶¶ 11–16. The complaint explains that the misconduct harmed Mr. McKay, who "purchased the Fake Fireball minis on one or more occasions." Compl. ¶ 22. As to the "what," the complaint clearly describes Fireball Whisky and Fireball Malt, including their composition, history, and packaging, as well as photographs of the two products. Compl. ¶¶ 12–18. As to the "when" and "where," the complaint explains that Fireball Malt has been in "170,000 stores nationwide that have beer and wine licenses but no liquor licenses, including in California, gas stations, convenience stores, and other retail establishments with only a beer and wine license" since 2020 and Mr. McKay has purchased the product "from Speedway gas stations in Mendocino County, California within the last three years." Compl. ¶¶ 15–16, 22. Sazerac cites to no case law that a pleading with particularity must address the street addresses of where the alleged harm occurred. *See Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014) (holding that there is no need to identify specific products under Rule 9(b) when "the products all involve the same misrepresentation"). As to the "how," the complaint clearly alleges a wide range of particular and plausible ways that Sazerac's labeling of Fireball Malt may have misled customers: by insinuating that Fireball Malt was as strong as Fireball Whisky by packaging it in a "shot" size, Compl. ¶ 20; by deceptively labeling Fireball Malt and Fireball Whisky with nearly

11

identical packaging, Compl. ¶ 16; by using ambiguous wording in the composition list on the label, Compl. ¶ 19.

Sazerac argues that the complaint fails to plead every element of a fraud claim—specifically, that it "fails to identify a misrepresentation or any justifiable reliance" and "is devoid of any allegations of scienter or intent to defraud." MTD at 8. The Court disagrees. The complaint identifies a misrepresentation: Sazerac's labeling and packaging of Fireball Malt in a way that would mislead a reasonable consumer to believe it to be Fireball Whisky and concealed that it was not. *See* Compl. ¶¶ 11–20. The complaint identifies a justifiable reliance: Mr. McKay reasonably believed the mini shot-sized bottles of Fireball Malt to be Fireball Whisky and thus purchased them. *See* Compl. ¶ 24 ("Plaintiff saw the labeling elements of the Fake Fireball and did not notice the differences from the Fireball Cinnamon Whisky. Indeed, Plaintiff believed, falsely, that he was purchasing a full serving of True Fireball. Plaintiff relied upon Defendant's labels and packaging which he reasonably understood was a single-serving of Fireball Whisky."). The complaint also includes allegations of scienter: that Sazerac intended for consumers to believe that Fireball Malt was hard liquor. *See* Compl. ¶ 21 ("Defendant intends that consumers believe, and consumers do believe, that the Fireball Malt Beverage mini bottles are smaller versions of Fireball Whisky. Consumer confusion is widespread.").

The Court **DENIES** the motion to dismiss the fraud claim under Rule 9(b).

D.  CLRA, UCL, and FAL Claims

Sazerac argues that Mr. McKay's claims fail under the "reasonable consumer test" of the CLRA, FAL, and UCL. MTD at 6. "The false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer . . . [and] prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Mr. McKay argues that he adequately pleads his claims under CLRA, UCL, and FAL. Opp. to MTD at 4. Under Rule 12(b), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). Taken as

12

true, the factual allegations made in the complaint meet the pleading standards of Rule 12(b).

### 1. Affirmatively Misleading

First, taken as true, the complaint sufficiently alleges that Sazerac's label and packaging are affirmatively misleading. Opp. to MTD at 4. The label for Fireball Malt is substantially the same as the label for Fireball Whisky; both include the brand name "Fireball," Sazerac's fire-breathing dragon logo, the words "RED HOT," the same color scheme, burnt edge, font and labeling, and the words "CINNAMON." *Compare* Exhibit A, *with* Exhibit B. The label for Fireball Malt contains the ambiguous descriptor "Malt Beverage With Natural Whisky & Other Flavors and Carmel Color." Compl. ¶ 19. Fireball Malt is packaged in the 1.7-oz, shot-size bottle common for hard liquor. Compl. ¶ 20.

In *Williams v. Gerber*, the Ninth Circuit held that the district court's grant of a motion to dismiss claims of false advertising of Gerber's Fruit Juice Snacks was inappropriate. *Gerber*, 552 F.3d at 939. The court noted that simply based on pictures of the packaging, several characteristics of the Fruit Juice Snacks packaging could be misleading: for instance, insinuating that the snacks contained real fruit juice by using fruits on the packaging; using ambiguous wording that the snacks was made from "fruit juice and other all natural ingredients." Likewise, here, a number of features of the Whisky Malt packaging could affirmatively mislead consumers: for instance, as described above: insinuating that Fireball Malt was as strong as Fireball Whisky by packaging it in a "shot" size, Compl. ¶ 20; deceptively labeling Fireball Malt and Fireball Whisky with nearly identical packaging, Compl. ¶ 16; using ambiguous wording in the composition list on the label, Compl. ¶ 19. Indeed, "a product label can be misleading even if the alleged misrepresentation is corrected on the ingredient list." *Ham v. Hain Celestial Grp.*, Inc., 70 F. Supp. 3d 1188, 1194 (N.D. Cal. 2014). Thus, while the labels do indeed accurately state that Fireball Malt has an ABV of 16.5% and Fireball Whisky has an ABV of 33%, a reasonable consumer would still be confused or misled by the labels when making the purchase.

Sazerac argues that the other descriptors on the label make plain that Fireball Malt is a malt beverage, not a whisky, citing to the language of "Malt Beverage," "ALC 16.5% BY VOL," and "WHAT YOU HAVE HERE TASTES LIKE SMOOTH WHISKY WITH A FIERY KICK OF

1   RED HOT CINNAMON" located on the back of the product. MTD at 7. But it is unclear from
2   the sentence that Fireball Malt tastes "like" whisky, negates any possible interpretation that it is
3   not whisky itself nor includes whisky as a component, at least not in this context of the rest of the
4   labeling. It is also not clear that consumers would carefully scrutinize the tiny print of "Malt
5   Beverage" and "ALC 16.5% BY VOL" in light of the other flashier language and design of the
6   packaging. The Ninth Circuit and other circuit courts rejected the argument that a reasonable
7   consumer, upon review of the package as a whole, would necessarily look beyond the misleading
8   misrepresentations on the front of the box to discover the truth from the ingredient list in small
9   print on the side of the box. *Gerber*, 552 F.3d at 939 (holding that reasonable consumers cannot
10  be expected to test prominent front-label claims by examining the fine print on the back label); *see
11  also Bell v. Publix Super Markets*, Inc., 982 F.3d 468, 476 (7th Cir. 2020) ("We therefore join our
12  colleagues in at least three other circuits in holding that an accurate fine-print list of ingredients
13  does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable
14  consumers. Many reasonable consumers do not instinctively parse every front label or read every
15  back label before placing groceries in their carts."). Moreover, even if "TASTES LIKE SMOOTH
16  WHISKY" could be read to imply that the product *is not* whisky, this Court should not impose on
17  the ordinary consumer an obligation to conduct extensive linguistic analysis on their grocery
18  shopping runs. *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020)
19  ("Consumer-protection laws do not impose on average consumers an obligation to question the
20  labels they see and to parse them as lawyers might for ambiguities, especially in the seconds
21  usually spent picking a low-cost product."); *Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d
22  109, 123 (S.D.N.Y. 2019) ("[A] parent walking down the dairy aisle in a grocery store, possibly
23  with a child or two in tow, is not likely to study with great diligence the contents of a complicated
24  product package, searching for and making sense of fine-print disclosures. . . . Nor does the law
25  expect this of the reasonable consumer.").

26  In its reply brief, Sazerac engages in the circular argument that "No disclaimer is involved
27  because there is nothing to be disclaimed. . . . McKay points to no survey evidence suggesting that
28  consumers are deceived by Fireball Cinnamon." Repl. to MTD at 3. Rather than explain why it

14

believes the disclaimer language to be sufficient to show a consumer that Fireball Malt is not a whisky, Sazerac merely reiterates that it believes consumers are not confused to begin with, something that cannot be assumed as a matter of law.

Additionally, Sazerac argues that Mr. McKay should have known that the products he bought in a gas station were not whisky because gas stations are not licensed to sell hard liquor. MTD at 7; *see also* Exhibit E (License Type 20, which "authorizes the sale of beer and wine for consumption off the premises where sold," and License Type 21, which "authorizes the sale of beer, wine and distilled spirits for consumption off the premises where sold"). A court should consider "all the information available to consumers and the context in which that information is provided and used." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021). A reasonable Californian consumer could nonetheless believe that he was buying Fireball Whisky. For instance, he could well be unaware of which establishments hold which liquor license types. He may not know that a gas station store can sell malt but not whisky. This is especially so if he is making a quick roadside purchase. He might also assume that the store is not complying with the terms of its liquor license. *See* Compl. ¶ 21 ("One radio personality who saw a huge Fireball display in front of the cash register at a gas station wondered if 'that specific store was doing something they're not supposed to be doing' by selling 'cinnamon flavored whiskey!!'") (cleaned up). And a reasonable consumer would not necessarily compare his purchase with other beverages in the vicinity to assess whether the store sold only beer/wine and malt. *Compare Warren et al. v. The Coca-Cola Co.*, Case No. 22-cv-6907 (S.D.N.Y. Aug. 21, 2022) (holding that "cursory observation of the other items on sale in the beverage section of the ShopRite supermarket where she purchased the Product would have revealed soft drinks, beer, and hard ciders/lemonades/seltzers, but no hard liquor, cocktails, or wine"), *with* Compl. ¶ 21 (describing a "huge Fireball display in front of the cash register at a gas station," not among other beverages). Sazerac argues that it has structured its distribution such that Fireball Whisky and Fireball Malt and never both placed in the same store. But the reasonable consumer may not be aware of Sazerac's distribution practices. The facts of this case do not "amount to the rare situation in which granting a motion to dismiss is appropriate." *Gerber*, 552 F.3d at 939.

### 2. Concealment

Second, Mr. McKay sets forth another theory of harm under the CLRA, FAL, and UCL—concealment. Opp. to MTD at 7. For claims under the CLRA, the complaint must allege facts showing misleading conduct or omission of a required disclosure; an "omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835, 51 Cal. Rptr. 3d 118, 126 (2006), *as modified* (Nov. 8, 2006). A defendant has an obligation to disclose when (1) "the omission was material," (2) the omission relates to a fact that is "central to the product's function," and (3) "one of the four *LiMandri* factors"[3] applies. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018).

As to the first factor, Sazerac's alleged omission is material because Mr. McKay's mistaken belief that the product was whisky led directly to his decision to purchase it. Compl. ¶ 26. "A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *In re Tobacco II Cases*, 46 Cal. 4th 298, 327, 207 P.3d 20, 39 (2009).

As to the second factor, Sazerac's alleged omission relates to a fact (ABV) that is central to the product's function (the beverage's strength as an alcoholic drink).

As to the third factor, the complaint sufficiently alleges facts that Sazerac's conduct satisfies the fourth *LiMandri* factor: "it makes partial representations that are misleading because some other material fact has not been disclosed." *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255, 134 Cal. Rptr. 3d 588, 593 (2011), *as modified* (Dec. 28, 2011). Mr. McKay has clearly alleged that Sazerac made the partial representation (that the product is Fireball) that is misleading (because consumers associate Fireball with Fireball Whisky) without disclosing other material facts (that the product is malt, not whisky). Sazerac's misrepresentations go beyond the "mere use

---

[3] The *LiMandri* factors provide that an omission is actionable fraud in four circumstances when: (1) the defendant is the plaintiff's fiduciary; (2) it has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) it actively conceals a material fact from the plaintiff; or (4) it makes partial representations that are misleading because some other material fact has not been disclosed. *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (1997).

of the brand name 'Fireball,'" but also to designing the label and packaging in a misleading manner.

The Court **DENIES** the motion to dismiss the CLRA, FAL, and UCL claims under Rule 12(b).

E.   Unjust Enrichment Claim

Sazerac challenges Mr. McKay's claim for unjust enrichment. In its opening brief on the motion to dismiss, Sazerac argues that an unjust enrichment claim cannot be a standalone claim and is merely a remedy similar to restitution. MTD at 8–9. In response, Mr. McKay argues that in California, standalone unjust enrichment claims are permissible. Indeed, this Court has found that the Ninth Circuit and courts in this district have routinely recognized standalone unjust enrichment claims. *See, e.g.*, *Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, at *36 (N.D. Cal. Aug. 16, 2021) (Chen, J.). Sazerac exhibited good judgment in abandoning this argument in its reply brief. Repl. to MTD at 9.

Sazerac next argues that to the extent that unjust enrichment is synonymous with a remedy of restitution, restitution damages are barred under *Sonner*. MTD at 8–9. "[T]raditional principles governing equitable remedies in federal courts . . . apply when a party requests restitution under the UCL." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). In order to secure an equitable remedy, a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL." *Id.* Following *Sonner*, "[i]n order to entertain a request for equitable relief, a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1313–14 (9th Cir. 2022) (citing *Sonner*, 971 F.3d at 843–44). Here, Mr. McKay is permitted to plead both damages and, in the alternative, restitution at the early pleadings stage. In *Junhan v. Nexo*, this Court found that at the pleading stage, the plaintiff may "allege claims in the alternative . . . [t]he equitable remedies afforded by the UCL and CLRA are expressly stated to be in addition to other available remedies at law." *Junhan Jeong v. Nexo Financial LLC, et. al.*, No. 21-CV-02392-BLF, 2022 WL 174236 (N.D.

17

1   Cal. Jan. 19, 2022). "Courts in the Ninth Circuit are divided on how exacting a standard *Sonner*

2   imposes on plaintiffs who plead claims for equitable remedies at the pleading stage." *Id.* at *27.

3   The court in *Junhan Jeong* found that the *Sonner* requirement did not extend with full force to

4   pleadings; it "provides limited guidance for *pleading* claims for legal and equitable relief . . .

5   courts [] do not consider *Sonner* to impose strict requirements at the pleading stage." *Id.* at *27;

6   *but see Freund v. HP, Inc.*, No. 22-cv-03794-BLF, 2023 WL 187506, at *6 (N.D. Cal. Jan. 13,

7   2023) (dismissing UCL claims because plaintiffs failed to plead facts establishing they lacked an

8   adequate remedy at law).

9   At this stage, the Court **DENIES** the motion to dismiss the unjust enrichment claim under

10   Rule 12(b). The Court reserves the right to reassess at a later stage of this case. *See Johnson v.*

11   *Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan.

12   7, 2022) ("[B]ecause *Sonner* was decided at a later posture, I agree with the plaintiffs that, if a

13   plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more

14   this early in the case . . . [and that] it is too early to determine whether the plaintiffs' legal

15   remedies will ultimately be adequate, so it makes sense to defer this determination.").

F.   Injunctive Relief

17   Lastly, Sazerac challenges Mr. McKay's standing to request injunctive relief. Mr. McKay

18   has asserted he intends to purchase Fireball products in the future so he will certainly be subjected

19   to Sazerac's purported misrepresentations. Compl. ¶ 27 ("Plaintiff intends to, seeks to, and will

20   purchase the Product again when he can do so with the assurance its representations are consistent

21   with its attributes and/or composition."). To establish Article III standing, an injury must be

22   "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and

23   redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

24   The parties dispute the first factor—whether Mr. McKay's future injury is concrete,

25   particularized, and actual or imminent. A threatened future injury must be "certainly impending"

26   to constitute injury in fact. *Id.* The Ninth Circuit "recognizes a history of lawsuits based on []

27   informational injuries." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)

28   (citing *Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1258 (9th Cir. 2010) (discussing the history of

informational injury serving as an injury-in-fact sufficient for standing)).  Sazerac argues that "McKay cannot show any risk of future injury arising from the labeling of Fireball Cinnamon" because Mr. McKay now knows the difference between the ingredients in Fireball Whisky and Fireball Malt.  MTD at 9.

Mr. McKay's ability to factcheck the ingredients does not moot the misrepresentation caused by the *confusion between* the similar packaging of Fireball Whisky and Fireball Malt.  Opp. to MTD at 15.  The Ninth Circuit has permitted claims for injunctive relief by consumers similarly situated to Mr. McKay.  *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) ("Despite now knowing that the "flushable" labeling was false at the time of purchase, should Davidson encounter the denomination 'flushable' on a Kimberly-Clark wipes package at the grocery store today, she could not rely on that representation with any confidence.") (cleaned up).

Construing all allegations in Mr. McKay's favor, the complaint has adequately alleged that Mr. McKay will face "certainly impending" harm "by not being able to rely on [the product] labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief." *Davidson*, 889 F.3d at 967.  *See* Compl. ¶ 27 ("Plaintiff is unable to rely on the labeling of not only this Product, but other flavored malt beverages which use the names of distilled spirits, because he is unsure of whether their representations are truthful. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance its representations are consistent with its attributes and/or composition.").

Other district court cases denying injunctive relief are distinguishable.  "Consumers who were misled by deceptive food labels lack standing for injunctive relief because there is 'no danger that they will be misled in the future.'"  *See, e.g.*, *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1196 (N.D. Cal. Oct. 3, 2014) (finding that the consumer would not be fraudulently induced into purchasing "All Natural" waffles now that she has learned that it contains nonorganic synthetic substance SAPP); *Garrison v. Whole Foods Mkt. Grp., Inc.*, No. 13-CV-05222-VC, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014) (finding that the consumer would not be fraudulently induced into purchasing "organic" foods from Whole Foods now knowing it contains

SAPP); *Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-CV-00296-WHO, 2014 WL 1017879, at *6 (N.D. Cal. Mar. 13, 2014) (finding that the consumer would not be fraudulently induced into purchasing evaporated cane juice now that she knows it contains added sugar); *Sinatro v. Barilla Am., Inc.*, No. 22-CV-03460-DMR, 2022 WL 10128276, at *10 (N.D. Cal. Oct. 17, 2022) (finding that the consumer would not be fraudulently induced into purchasing Barilla pasta now that they know that it is not manufactured in Italy). Except for *Sinatro*, these cases predate the Ninth Circuit's decision in *Davidson*. Moreover, these cases involve a single fraudulent product label whereas the instant case involves two similar product labels that inject an additional element of confusion into product selection. Mr. McKay has standing to seek injunctive relief to enjoin Sazerac from continuing to use the allegedly fraudulent labeling on Fireball Malt.

## IV. CONCLUSION

Mr. McKay has plausibly pled factual allegations sufficient to entitle him to relief. For the reasons stated above, the Court **DENIES** Sazerac's Motion to Dismiss.

This order thus disposes of Docket No. 15 and 16.

**IT IS SO ORDERED**.

Dated: May 17, 2023

_____
EDWARD M. CHEN
United States District Judge