**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE A. MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
RAJIV V. THAIRANI (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRISTOPHER MCKAY, TERRY MYERS, and DAWN OUTLAW, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>SAZERAC COMPANY, INC.,<br><br>      Defendant. | Case No.: 23-cv-00522-EMC<br><br>Hon. Edward M. Chen<br><br>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION<br><br>DATE: October 10, 2024<br>TIME: 1:30 p.m.<br>CTRM: 5 – 17th Floor |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION.........................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................2

I.      INTRODUCTION ...................................................................................................2

II.     STATEMENT OF FACTS .....................................................................................3

      A.      Defendant Manufactures Fireball Whiskey, the Second Most Popular Distilled Spirit in the United States. ........................................................................3

      B.      In 2017, to Boost Defendant's Revenues, ▆▆▆▆ Introduced Wine- and Malt-Based ▆▆▆ Brands That Looked Like Popular Distilled Beverages.................4

      C.      ▆▆▆ ABA ▆▆▆ Brands Evolve into Fraud. ............................................6

      D.      ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆........8

      E.      ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ..........................................................10

      F.      ▆▆▆▆▆▆▆▆▆▆▆▆ ......................................................................11

      G.      In 2022, Defendant Introduced Fireball Malt in the California Market With a Label It Knew Would Deceive Consumers........................................................12

      H.      Throughout the Class Period, Defendant Uniformly Sold Fireball Malt With the Same Deceptive Label and Formula. ..........................................................13

      I.      Dr. Ben-Akiva Has Proposed a Methodology for Calculating Restitution and Damages Owed to the Class. ........................................................................13

III.    ARGUMENT ..........................................................................................................14

      A.      The Class Satisfies the Requirements of Rule 23(a).........................................14

          1.      The Class is Sufficiently Numerous.                                                 14

          2.      There are Common Questions of Fact and Law.                                  15

          3.      Plaintiffs are Typical of the Class.                                                 16

          4.      Plaintiffs and Counsel Will Adequately Protect the Interests of the Class. 17

      B.      The Class Satisfies the Requirements of Rule 23(b)(3)........................................18

          1.      Common Questions Predominate about Whether Defendant's Label Was Deceptive to Reasonable Consumers.                                                 19

          2.      Common Questions Predominate on Restitution and Damages.               19

          3.      Common Questions Predominate on Materiality.                                 22

          4.      Common Questions Predominate on Punitive Damages.                        24

          5.      A Class Action Is Superior.                                                          25

      C.      The Class Also Satisfies the Requirements of Rule 23(b)(2). ...............................25

IV.     CONCLUSION.......................................................................................................26

# TABLE OF AUTHORITIES

## CASES

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ........................................................ 14

*Astiana v. Kashi Co.,* 291 F.R.D. 493 (S.D. Cal. 2013) ..................................................... 15, 17

*Bailey v. Rite Aid Corp.*, 338 F.R.D. 390 (N.D. Cal. 2021) ................................................ 19, 20

*Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) .................................... 21

*CF Gainesville Inv'r, LLC v. Astroenery Solar, Inc.*, No. 2:21-CV-02654-CAS, 2022 U.S. Dist. LEXIS 128188 (C.D. Cal. July 18, 2022) ........................................................... 22

*Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365 (N.D. Cal. 2010) ..................... 15

*Comcast v. Behrend*, 133 S. Ct. 1426 (2013) ....................................................................... 20

*Cortez v. Purolator Air Filtration Products Co.,* 23 Cal. 4th 163 (2000) ............................ 19

*Delarosa v. Boiron, Inc.*, 275 F.R.D. 582 (C.D. Cal. 2011) .................................................. 24

*Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168 (9th Cir. 2007), *overruled on other grounds by Wal-Mart*, 564 U.S. 338 ................................................................................................. 16

*Fitzhenry-Russell v. Pepper Snapple Grp. Inc.*, 326 F.R.D. 592 (N.D. Cal. 2018) .............. 19

*Gunaratna v. Dennis Gross Cosmetology LLC*, No. CV 20-2311-MWF (GJSx), 2023 U.S. Dist. LEXIS 60796 (C.D. Cal. Apr. 4, 2023) .................................................................. 22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................................. 14

*In re Brazilian Blowout Litig.,* 2011 WL 10962891 (C.D. Cal. Apr. 12, 2011) ..................... 24

*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015) ....................................... 21

*In re Lenovo Adware Litig.*, No. 15-MD-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ................................................................................................................... 21

*In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2016 U.S. Dist. LEXIS 179487 (N.D. Cal. Sep. 14, 2016) .............................................................................. 21

*In re POM Wonderful LLC Marketing & Sales Practices Litig.*, 2012 WL 4490860 (C.D. Cal. Sept. 28, 2012) ................................................................................................... 15

*In re Tobacco II Cases* (2009) 46 Cal. 4th 298 ................................................................... 19, 23

*In re: Sazerac Consumer Litigation*, 7:23-cv-02751 (S.D.N.Y.) ........................................... 25

*James v. Uber Techs. Inc.*, 338 F.R.D. 123 (N.D. Cal. 2021) .............................................. 15

*Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) .................................................................................... 15

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) ..................................................... 16

*Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134 (2003) .................................... 19

*Korolshteyn v. Costco Wholesale Corp.*, No. 3:15-CV-709-CAB-RBB, 2017 WL 1020391
   (S.D. Cal. Mar. 16, 2017)................................................................................................. 15

*Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 U.S. Dist. LEXIS 92374
   (N.D. Cal. July 15, 2016) ............................................................................ 15, 19, 21, 23

*Lytle v. Nutramax Labs., Inc.*, No. 22-55744, 2024 U.S. App. LEXIS 9722 (9th Cir. Apr.
   22, 2024) ......................................................................................................................... 20

*Maldonado v. Apple, Inc.*, 333 F.R.D. 175 (N.D. Cal. 2019) .................................................... 20

*Mazza v. Honda American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ............................ 15

*Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2016 WL 1535057 (N.D. Cal.
   Apr. 15, 2016) ................................................................................................................. 19

*Occidental Land, Inc. v. Superior Court*, 18 Cal. 3d 355 (1976) .............................................. 23

*Pettit v. Procter & Gamble Co.*, No. 15-CV-02150-RS, 2017 WL 3310692 (N.D. Cal.
   Aug. 3, 2017) ................................................................................................................... 15

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015) .............................. 20

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) .................................. 15

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................................................. 17

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011)............................................ 18, 23

*Testone v. Barlean's Organic Oils, LLC*, No. 19-CV-169 JLS (BGS), 2021 U.S. Dist.
   LEXIS 185896 (S.D. Cal. Sep. 28, 2021)......................................................................... 21

*Vasquez v. Superior Court,* 4 Cal. 3d 800 (1971) ................................................................... 16

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. at 350 (2011) ......................................................... 15

*West v. Cal. Servs. Bureau*, 323 F.R.D. 295 (N.D. Cal. 2017).................................................. 18

*Williams v. Gerber Products Co.,* 553 F.3d 934 (9th Cir. 2008)............................................... 15

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010).............................. 17

*Wolph v. Acer Am. Corp.*, 2012 WL 993531 (N.D. Cal. Mar. 23, 2012) .................................. 24

*Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113 (N.D. Cal. June 7, 2011)........................... 24

**STATUTES**

Bus. & Prof. Code § 17200 ...................................................................................................... v

Bus. & Prof. Code § 17203 .............................................................................................. 18, 24

Bus. & Prof. Code § 17500 ...................................................................................................... v

Bus. & Prof. Code § 17535 ..................................................................................................... 18

Cal. Civ. Code § 1750 ................................................................................................ v

Cal. Civ. Code § 1780 ........................................................................................ 18, 23

Cal. Civ. Code § 3294(a) .......................................................................................... 18

Cal. Civ. Code §§ 1761(f)–(g) .................................................................................. 18

### OTHER AUTHORITIES

Buzz Bradley, *How can Fireball be sold at non-liquor stores legally?*, B985, April 9,
2021, https://b985.fm/how-can-fireball-be-sold-at-non-liquor-stores-legally/ ...................... 7

Steve King, *Wait? Can you buy Fireball at gas stations and grocery stores now?*, Q1057,
April 9, 2021, https://q1057.com/wait-can-you-buy-fireball-at-gas-stations-and-
grocery-stores-now/ ................................................................................................... 7

### RULES

Fed. R. Civ. P. 23(a)(1) ...................................................................................... 12, 13

Fed. R. Civ. P. 23(a)(4) ............................................................................................ 15

Fed. R. Civ. P. 23(b) ................................................................................................ 12

Fed. R. Civ. P. 23(b)(2) ............................................................................................ 23

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 12, 16

1

## NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

Please take notice that on October 10, 2024, at 1:30 p.m., or as soon thereafter as this motion may be heard, Plaintiffs Christopher McKay, Terry Myers, and Dawn Outlaw will, and hereby do, move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, to certify the following class:

> All persons in the State of California who purchased Fireball Malt between February 3, 2019, and the date of class notice.

The Class will pursue claims under the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"); the California Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA"); the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL"); and the common law (for fraud, deceit and/or misrepresentation).

Plaintiffs further request that the Court appoint (1) Plaintiffs Christopher McKay, Terry Myers, and Dawn Outlaw as class representatives on all claims, and (2) Gutride Safier LLP as class counsel. Plaintiffs finally request the Court to order the parties to meet and confer and present this Court, within fifteen (15) days of an order granting class certification, a proposed notice to the certified class.

This Motion is based on Rule 23 of the Federal Rules of Civil Procedure, the supporting Memorandum of Points and Authorities herein, the Declaration of Seth A. Safier, the Declaration of Rajiv V. Thairani, the Declaration of Dr. Moshe Ben-Akiva, the pleadings and papers on file in this action, and any other matter of which this Court may take notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant Sazerac Company, Inc. makes Fireball Whisky, the second most popular distilled spirit in the United States. For decades, that was the only Fireball-branded product available. However, in 2020, in an effort to boost sales, Defendant decided to create a malt-based product that could be sold any place that could sell beer ("Fireball Malt"). But rather than allow this new product to stand on its own, Defendant consciously decided to deceive consumers into thinking that the new product *was* Fireball Whisky. It ████████████████████████████████████████████ made the two products' labels virtually indistinguishable. The scheme paid off. Consumers were confused, and, as a result, Defendant was able to charge *the same price* for Fireball Malt despite the fact it delivered only *half the alcohol content*.

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████ In other words, the scheme was simply too profitable to stop. Although California law prohibits all forms of deception, Defendant's intentional conduct makes this case particularly egregious and, indeed, ripe for certification and punitive damages.

---

[1] Exhibits to the accompanying Thairani Declaration are referenced as "Pls.' Ex."

1    Here, the proposed Class easily meets the requirements of Rule 23(b)(3). There is no dispute that

2    Fireball Malt's labels never changed during the class period and always included the same misleading

3    elements that made it easy to confuse with Fireball Whisky. Fireball Malt's composition also remained the

4    same throughout the class period; it was always malt-based and had only half the ABV of Fireball Whisky.

5    Whether Defendant's label is misleading, and whether it is material to reasonable consumers will both be

6    determined by reference to the objective "reasonable consumer" standard, and thus, established by

7    common, class-wide proof. The class's injury is likewise susceptible to class-wide proof in the form of Dr.

8    Ben-Akiva's proposed conjoint price premium model, as is the issue of punitive damages and whether Mr.

9    Brown and other executives intentionally sought to defraud the Class. These are the main issues in the case

10   and thus, predominate over any individualized issues Defendant may conjure up. Finally, additional

11   grounds exist to grant Plaintiffs' motion with respect to their claims for injunctive relief pursuant to Rule

12   23(b)(2).

13   **II.**     **STATEMENT OF FACTS**

14        **A.     Defendant Manufactures Fireball Whiskey, the Second Most Popular Distilled**
15               **Spirit in the United States.**

16   ███████████████████████████████████████████████████████████

17   ███████████████████████████████████████████████████████████████

18   ███████████████████████████████████████████████████████████████

19   ███████████████████████████████████████████████████████████████

20   ███████████████████████████████████████████████████████████████

21   ███████████████████████████████████████████████████████████████

22   ██████████████████████████████████████████

23        Until recently, Mark Brown was Defendant's CEO. *See* Brown Tr. 13:18–14:10; 118:4–119:13. █

24   ███████████████████████████████████████████████████████████████

25   ███████████████████████████████████████████████████████████████

26   ███████████████████████████████████████████████████████████████

27   ███████—turning Mr. Goldring and his family into billionaires in the process. Brown Tr. 18:23–19:7;

28   37:15–22. ███████████████████████████████████████████████████

---

3

1 ████████████████████████████████████████████████████████████

2 ██████████████████████████████████████ This was hugely successful and made

3 Mr. Brown a living legend at the company.

4      **B.      In 2017, to Boost Defendant's Revenues, ████████ Introduced Wine- and**

5      **Malt-Based ████████ Brands That Looked Like Popular Distilled Beverages.**

6      After acquiring hundreds of brands, and taking them national, Defendant came to control a

7 significant portion of the United States distilled beverage market but eventually its opportunities for growth

8 through acquisition slowed. ████████████████████████████████

9 ████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████

14        ██████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████

21 ██████████████████████████████████████████

22      Defendant was initially careful about its new strategy. It introduced ABA products under the DBA

23 "Brookstone Distilling Co.," to keep its fingerprints off the launch. *See* Pls.' Ex. 26 at Sazerac-

24 CM_00113416. ████████████████████████████████████████

25 ████████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████████████

1    ████ *Id.* Although ████ brands are somewhat common in the alcohol industry, ████ was now

2    not just using ████ brands to benefit from the popularity of another beverage, he wanted malt- and wine-

3    based products to actually appear to consumers as distilled spirits. The following were the fruit of that idea:



14   Pls.' Ex. 28. The products above are all intended to look like popular distilled spirits. For example,

15   "Stroyski" has a brand name similar to "Stoli" vodka with a classic red label similar to "Smirnoff" vodka.

16   *Compare* Pls.' Ex. 28 *with* Pls.' Ex. 29. "Hobble Creek" is intended to mimic "Knob Creek," a popular

17   bourbon product. *Compare* Pls.' Ex. 28 *with* Pls.' Ex. 30. And "Flash-Point" is a cinnamon alcohol intended

18   to be comparable to "Fireball." *Compare* Pls.' Ex. 31 *with* Pls.' Ex. 32. Some of the ABA products, like

19   Flash-Point, were knock-offs of Defendant's own products and some of them were knock-offs of other

20   popular products.

21        Flash-Point was one of Defendant's most popular ████ brands. A side-by side comparison shows

22   that it was similar in appearance to Fireball Whisky—though much less so than Fireball Malt would

23   ultimately become:

1
2
3
4
5
6
7
8
9



10  Pls.' Ex. 31; Pls.' Ex. 32.

11      Defendant's experiment was met with widespread criticism in the media. One report, titled *Fake*

12  *Booze: Convenience stores start stocking shelves with faux liquor*, discusses the new products appearing

13  in South Carolina gas stations. Pls.' Ex. 33. In the report, a local liquor store owner comments: "it's obvious

14  it's trying to copy known brands." *Id.* Another report in Virginia, explained "[t]he branding is clearly

15  ***intended to evoke the products they mimic without using words like whiskey or vodka.***" Pls.' Ex. 35

16  (emphasis added). Despite the negative press, ██████████████████████████

17  ███████████████████████████████████████████████████

18  ███████████████████████████████████████████████████

19  ███████████████████████████████████████████████████

20  ██████████

21      **C.**  ██████████ **ABA** ██████████ **Brands Evolve into Fraud.**

22      Emboldened by the success of the ████ brands, ████████████████████████

23  ███████████████████████████████████████████████████

24  ███████████████████████████████████████████████

25     ████████████████████████████████████████████████

26  ███████████████████████████████████████████████████

27

28  [2] Ms. Maxwell has a master's degree in applied psychology and a doctorate in sports management and
    consumer psychology. *Se e* Pls.' Ex. 36.

1 ██████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████████

4 ██████████████████████████████████████████████████████████

5 ██████████████████████████████████████████████████████████

6 ██████████████████████████████████████████████████████████

7 ██████████████████████████████████████████████████████████

8 █████████████████████████████████████████

9 ██████████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████████

11 ██████████████████████████████████████████████████████████

12 ██████████████████████████████████████████████████████████

13 █████████████████ Likely, Mr. Brown's behavior had a chilling effect on other employees. ██

14 ██████████████████████████████████████████████████████████

15 ██████████████████████████████████████████████████████████

16 ██████████████████████████████████████████████

17 ████████████████████████████████████████████████████████

18 ██████████████████████████████████████████████████████████

19 ██████████████████████████████████ The only differences between the

20 labels were removing the word "whisky," moving the ABV statement to the back, and modifying the fine

21 print statement of contents:

22

23

24

25

26

27

28



*Compare* Pls.' Ex. 2 *with* Pls.' Ex. 7. ██████████ likely knew that Fireball Malt would be an even bigger success than Flash-Point. Here, instead of merely trying to evoke popular distilled beverages, with █████ brands, ██████████ created a product that was designed to directly exploit consumers association of the Fireball label with whisky. █████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

█████████████████████

**D.** ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████

██████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; CASE NO. 4:23-CV-00522-EMC

1  ████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████

    By early 2021, the media had begun reporting about the phony Fireball.[3] One article, titled *Table Hopping: Liquor stores heated up over sneaky Fireball move*, described the new products that were showing up in grocery stores throughout New York as intentionally misleading consumers:

> It is malt-based and clocks in at 33 proof, or 16.5 percent alcohol. Fireball Cinnamon Whisky is whisky-based and runs at 66 proof. The labels look almost identical. That is ***intentional***.

Pls.' Ex. 16 (emphasis added).

    In response to the media criticism, ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

  ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████

_____

[3] *See*, *e.g.*, Steve King, *Wait? Can you buy Fireball at gas stations and grocery stores now?*, Q1057, April 9, 2021, https://q1057.com/wait-can-you-buy-fireball-at-gas-stations-and-grocery-stores-now/;  Buzz Bradley, *How can Fireball be sold at non-liquor stores legally?*, B985, April 9, 2021, https://b985.fm/how-can-fireball-be-sold-at-non-liquor-stores-legally/.

**E.** ████████████████████████████████████

The concerns about Fireball Malt were not limited to ████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████



1 ███████████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3      **G.**    **In 2022, Defendant Introduced Fireball Malt in the California Market With a**

4            **Label It Knew Would Deceive Consumers.**

5      By the time Fireball Malt was introduced in California in or around April 2022, ██████████

6 ███████████████████████████████████████████████████████

7 ████████████████████████████ Nevertheless, Defendant launched Fireball Malt in California without

8 modifying the label in any way.

9      And, just as in the test markets, Defendant faced ███████████████████

10 ███████████████████████████████████████████████████████

11 ███████████████████████████████████████████████████████

12 ███████████████████████████████████████████████████████

13 ███████████████████████████████████████████████████████

14 ███████████████████████████████████████████████████████

15 ███████████████████████████████████████████████████████

16 █████████████████████████████████████

17      To this day, Defendant's retail partners struggle to tell Fireball Malt and Fireball Whisky apart. The

18 products are so confusing that online retailers in California frequently mismatch the Fireball Malt label

19 with an incorrect product description. *See* Pls.' Ex. 37; Pls.' Ex. 38. For example, at the time of this filing,

20 Ubereats.com shows a product with the Fireball Malt label available for delivery from FoodMaxx but

21 describes the product as "Fireball Red Hot Cinnamon ***Whisky*** Liquor." Pls.' Ex. 37 (emphasis added).

22 BevMo similarly offers a product with the Fireball Malt label for delivery in California but its website

23 describes the product as ***"Blended Whisky."*** Pls.' Ex. 38 (emphasis added). This is not an accident. After

24 four years, Defendant is well aware that these issues exist but it refuses to take reasonable steps to correct

25 the confusion.

26     █████████████████████████████████████████████████

27 ████████████████████████████ Defendant will continue defrauding consumers, and extract

28 millions more from unsuspecting consumers, if it is not enjoined from continuing its illegal practices.

### H.   Throughout the Class Period, Defendant Uniformly Sold Fireball Malt With the Same Deceptive Label and Formula.

Since Defendant introduced Fireball Malt, it has consistently sold the product in California with the same deceptive labels. Pls.' Ex. 1 at Sazerac-CM_0000122–23; Pls. Ex. 2; Pls.' Ex. 3 at Sazerac-CM_0000131–32; Pls.' Ex. 4; Pls.' Ex. 5 at Sazerac-CM_0000005–06; Ex. 11 at 2–3. Similarly, throughout the class period, Defendant has used the same label for Fireball Whisky. Pls.' Ex. 6 at Sazerac-CM_0000069–70; Pls.' Ex. 7; Pls.' Ex. 8 at Sazerac-CM_00000095–96; Pls.' Ex. 9; Pls.' Ex. 10 at Sazerac-CM_00000072–73; Pls.' Ex. 11 at 3. The labels for the two products are substantially identical, with the same red, yellow, and black color scheme, lettering, and logo. *Compare* Pls.' Ex. 2 *with* Pls.' Ex. 7. The bottles for the products are also the same, as is the color of the liquid inside. *Id.* The only discernible difference between the front label of the two Products is the omission of the word "Whisky" from the phrase "Cinnamon Whisky" appearing at the bottom. *Id.* Additionally, both Products have a fine print statement of contents but, from afar, the statements look the same—i.e., like illegible fine print. *Id.* Finally, throughout the class period, Fireball Malt has remained a malt-based product with an ABV of 16.5% (Pls.' Ex. 1 at Sazerac-CM_00000123–25; Pls.' Ex. 3 at Sazerac-CM_00000130–32; Pls.' Ex. 5 at Sazerac-CM_00000004–06; Pls.' Ex. 11 at 2–3; Pls.' Ex. 12 ¶ 15), whereas Fireball Whisky has remained a whisky-based product with an ABV of 33% (Pls.' Ex. 6 at Sazerac-CM_00000068–70; Pls.' Ex. 8 at Sazerac-CM_00000094–96; Pls.' Ex. 10 at Sazerac-CM_00000071–73; Pls.' Ex. 11 at 3).

### I.   Dr. Ben-Akiva Has Proposed a Methodology for Calculating Restitution and Damages Owed to the Class.

Plaintiffs' damages expert, Dr. Ben-Akiva, proposes a widely accepted methodology to measure and isolate the price premium that consumers paid as a direct result of Defendant's deceptive Fireball Malt label. Ben-Akiva Decl. ¶¶ 10, 34–56. Indeed, Dr. Ben-Akiva, an MIT professor, helped to pioneer and develop the conjoint analysis methodology, which is now a mainstay in consumer fraud cases. *Id.* ¶ 3.

Conjoint analysis utilizes a survey where respondents are presented with various choices of product attributes, prices and alternatives, and then are asked to select their preferred product; a method which allows researchers to then apply statistical methods, including regression analysis, to value those

attributes in the market. *See id.* ¶¶ 37–54. Here, Dr. Ben-Akiva designed a carefully controlled conjoint survey to measure the price premium attributable to consumers' incorrect belief that Fireball Malt is Fireball Whisky. *Id.* ¶¶ 37–49. The survey will begin with screening questions that will limit participants to those who purchased alcoholic beverages within the last year. *Id.* ¶¶ 37–40. After receiving instructions, each participant will be asked to complete five or more choice-based tasks that present different alcoholic products with different attributes: brand, product name, size, ABV, alcohol type (e.g., whisky vs malt), and price. *Id.* ¶¶ 43–47. Participants will then select their most preferred option and indicate how likely they would be to purchase the preferred product. *Id.* ¶ 48. Dr. Ben-Akiva will analyze the results of the survey using what is often referred to as Hierarchical Bayes regression analysis and measure the price premium using a market simulation tool. *Id.* ¶ 53. Through this process, Dr. Ben-Akiva will isolate the price premium associated with the Fireball Malt label. *Id.* ¶ 54. It will be expressed as a percentage or amount of the sales price that is attributable to the false impression that the products are whisky and have the ABV of a whisky product. *Id.*

## III. **ARGUMENT**

Rule 23 provides district courts with broad discretion to determine whether a class should be certified. *See Armstrong v. Davis*, 275 F.3d 849, 872, n.28 (9th Cir. 2001). Class actions are favored where, like here, there is alleged wrongdoing against a large number of persons, each of whom has suffered only a small amount of damages. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class certification appropriate because litigation costs would dwarf potential recovery by class members if forced to pursue actions individually).

A class action must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. The class must also satisfy at least one subdivision of Rule 23(b). Here, the Class satisfies Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### A. **The Class Satisfies the Requirements of Rule 23(a).**

#### 1. **The Class is Sufficiently Numerous.**

Rule 23(a)(1) requires the class to be so numerous that joinder of all members is "impracticable."

---

Fed. R. Civ. P. 23(a)(1). The exact size need not be known, so long as common sense indicates it is large enough. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982). Usually, "one hundred or more members" suffices. *James v. Uber Techs. Inc.*, 338 F.R.D. 123, 130 (N.D. Cal. 2021); *see also Pettit v. Procter & Gamble Co.*, No. 15-CV-02150-RS, 2017 WL 3310692, at *2 (N.D. Cal. Aug. 3, 2017). Defendant has sold ████████████████████ n California during the class period, which indicates that the Class is sufficiently numerous. Pls.' Ex. 43 at Sazerac-CM00002092.

### 2.  There are Common Questions of Fact and Law.

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury' and that the class's claims depend on 'a common contention . . . of such a nature that it is capable of classwide resolution.'" *Pettit*, 2017 WL 3310692, at *2 (quoting *Wal-Mart*, 564 U.S. at 350). Not all questions need be common to satisfy the rule. *Id.*; *see also Mazza v. Honda Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("[C]ommonality only requires a single significant question of law or fact."). In a false labeling case, such as this, "the central question is whether [the Defendant's labels] were likely to deceive a reasonable consumer." *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 U.S. Dist. LEXIS 92374, at *11 (N.D. Cal. July 15, 2016); *see Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("[T]he primary evidence in a false advertising case is the advertising itself."). The UCL, CLRA, and FAL require a plaintiff to show only "that members of the public are likely to be deceived" based on an objective standard. *Kumar,* 2016 U.S. Dist. LEXIS 92374, at *12. Where there are "identical statements on the labels of the products at issue," the answer to that question will "be based on common facts." *Id.*; *see also Korolshteyn v. Costco Wholesale Corp.*, No. 3:15-CV-709-CAB-RBB, 2017 WL 1020391, at *5 (S.D. Cal. Mar. 16, 2017) ("By definition, class members were exposed to these labeling claims, creating a 'common core of salient facts.'"). As a result, "[c]ourts routinely find commonality in false advertising cases." *Astiana*, 291 F.R.D. 493, 501 (S.D. Cal. 2013) (citing *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012)).[4]

---

[4] *See also, e.g.*, *Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 377 (N.D. Cal. 2010); *In re POM Wonderful LLC Marketing & Sales Practices Litig.*, 2012 WL 4490860, at *1 (C.D. Cal. Sept. 28, 2012); *Pettit v.*, 2017 WL 3310692, at *2-4.

In short, the "central question" here is common to all class members: was Defendant's Fireball Malt label likely to deceive reasonable consumers? This question will be answered on a class-wide basis using common evidence: First, and foremost, the same labels for Fireball Malt and Fireball Whisky were in use throughout the class period. Pls.' Ex. 1 at Sazerac-CM_0000122–23; Pls. Ex. 2; Pls.' Ex. 3 at Sazerac-CM_0000131–32; Pls. Ex. 4; Pls. Ex. 5 at Sazerac-CM_0000005–06; Pls.' Ex. 6 at Sazerac-CM_0000069–70; Pls.' Ex. 7; Pls.' Ex. 8 at Sazerac-CM_00000095–96; Pls.' Ex. 9; Pls.' Ex. 10 at Sazerac-CM_00000072–73; Pls.' Ex. 11 at 2–3. Further, it is undisputed that Fireball Malt was made from a malt base—not whisky—and had half the ABV of Fireball Whisky throughout the class period. Pls.' Ex. 1 at Sazerac-CM_00000123–25; Pls.' Ex. 3 at Sazerac-CM_00000130–32; Pls.' Ex. 5 at Sazerac-CM_00000004–06; Pls.' Ex. 11 at 2–3; Pls.' Ex. 12 ¶ 15. Plaintiffs have also submitted evidence of Defendant's own admissions ███████████████████████████████████████████. Pls.' Ex. 17 at Sazerac-CM_00096968; Pls.' Ex. 21 at Sazerac_00119482; Pls.' Ex. 41 at Sazerac-CM_00000521. Finally, Plaintiffs' expert has proposed a survey method he intends to use to determine whether the labels have a tendency to deceive a significant portion of reasonable consumers. Ben-Akiva Decl. ¶¶ 8, 29–33. This proof will resolve the common question of whether Fireball Malt's label violates the reasonable consumer standard for Plaintiffs and the entire proposed Class. *See Vasquez v. Superior Court,* 4 Cal. 3d 800, 808 (1971) (holding that, where "numerous consumers are exposed to the same dubious practice by the same seller [] proof of the prevalence of the practice as to one consumer would provide proof for all.").

### 3.  Plaintiffs are Typical of the Class.

"Typicality focuses on the class representative's claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative aligns with the interests of the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). It "is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.* "Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1184 (9th Cir. 2007), *overruled on other grounds by Wal-Mart*, 564 U.S. 338. The named plaintiffs' claims are typical

1    if they stem from the same practice or course of conduct as that of the class and are based upon the same

2    legal theory. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

3          Plaintiff McKay, Plaintiff Myers, and Plaintiff Outlaw's claims are typical of those of the Class.

4    They, like all class members: purchased Fireball Malt during the class period with a label that was

5    substantially identical to the label for Fireball Whisky (McKay Dec. ¶ 3; Myers Dec. ¶ 3; Outlaw Dec. ¶ 3;

6    Pls.' Ex. 11 at 2–3); believed that they were purchasing Fireball Whisky (McKay Dec. ¶ 3; Myers Dec. ¶

7    3; Outlaw Dec. ¶ 3); paid a price premium based on their belief that Fireball Malt was Fireball Whisky and

8    had the alcohol content of Fireball Whisky (McKay Dec. ¶ 4; Myers Dec. ¶ 4; Outlaw Dec. ¶ 4; *see also*

9    Ben-Akiva Decl. ¶¶ 37–56); and are seeking recovery of the price premium (*see* FAC ¶¶ 57, 67, 88, 96).

10   Courts routinely find similar facts sufficient for typicality. *See, e.g.*, *Pettit*, 2017 WL 3310692, at *4

11   ("Pettit's claims are typical of the putative class claims; she claims to have purchased Freshmates under

12   the apprehension they were appropriate for flushing down the toilet, and now alleges she is owed restitution

13   of the price premium she paid for an ostensibly 'flushable' product because P&G's 'flushable' label was

14   false."); *Astiana*, 291 F.R.D. at 502 (finding typicality where the named plaintiff "suffered the same type

15   of economic injury and seeks the same type of damages as the putative class members").

16         Accordingly, each Plaintiffs have standing to seek relief under the CLRA, UCL, the FAL, and the

17   common law, and their claims are typical of the Class.

18         **4.   Plaintiffs and Counsel Will Adequately Protect the Interests of the Class.**

19         Fed. R. Civ. P. 23(a)(4) requires that the class representative and class counsel "fairly and

20   adequately protect the interests of the class." In the Ninth Circuit this is satisfied if (1) neither the

21   representative plaintiffs nor their counsel "have any conflicts of interest with other class members," and

22   (2) "the representative plaintiffs and their counsel will prosecute the action vigorously on behalf of the

23   class[.]" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020).

24         Plaintiffs will fairly and adequately protect the interests of the Class because it is in their best

25   interest to prosecute the claims alleged in the Amended Class Action Complaint to obtain full

26   compensation due to all class members for the deceptive conduct of which they complain. Plaintiffs do

27   not have any conflicts, let alone an irreconcilable conflict, with other class members. Rather, Plaintiffs

28   stand in the same shoes as all other members of the Class, seek the same relief as other class members,

and have a common interest in obtaining all of the relief sought.

Plaintiffs' counsel will also adequately protect the interests of the class. Counsel has successfully represented numerous classes, involving a variety of claims, in state and federal courts throughout the country. Safier Decl. ¶ 4, Ex. A at 1-5, 12-18. Gutride Safier LLP has been involved (and appointed class counsel) in at least twenty-eight class actions, including several cases relating to food and product mislabeling; it also obtained many of the key Ninth Circuit precedents applicable in consumer cases. *Id.*, Ex. A at 1-2. Plaintiffs' counsel has the necessary financial resources to vigorously litigate this action. *Id.* ¶ 6. The firm does not have any conflicts of interest with members of the class. *Id.* ¶ 7. This is more than sufficient to establish adequacy. *See, e.g.*, *Vizcarra v. Unilever United States*, 339 F.R.D. 530, 551 (N.D. Cal. 2021) (finding adequacy where counsel have "extensive experience successfully prosecuting consumer protection class actions such as this one"); *West v. Cal. Servs. Bureau*, 323 F.R.D. 295, 306 (N.D. Cal. 2017) (finding adequacy where counsel "have experience litigating class action claims in both federal and state courts, and appear to have been prosecuting this action vigorously.").

### B.    The Class Satisfies the Requirements of Rule 23(b)(3).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The focus is on the relationship between the common and individual issues." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (internal quotations and citation omitted)). Predominance does not require that all issues in the case be common. Rather, the common questions need only be "a significant aspect of the case . . . [that] can be resolved for all members of the class in a single adjudication." *Mazza*, 666 F.3d at 589. Courts routinely find predominance in false labeling cases because the answer to whether the label was false or misleading to reasonable consumers, and whether it was material "will be the same for the entire class." *Korolshteyn*, 2017 WL 1020391, at *6. "These common questions are not only more significant than other questions at issue in [the] suit, they are the most significant questions in this lawsuit. Therefore, these questions predominate over any individual questions that may arise." *Id.*; *see also*, *e.g., Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2016 WL

1535057, at *6-7 (N.D. Cal. Apr. 15, 2016) (finding predominance in false labeling action based on common questions regarding deception, materiality, and classwide proof of restitution); *Kumar,* 2016 U.S. Dist. LEXIS 92374, at *32 (same); *Pettit*, 2017 WL 3310692, at *2-4, 5 (same); *In re Tobacco II Cases,* 46 Cal. 4th 298, 312 (2009) (holding that questions of materiality and the likelihood a representation will mislead a reasonable consumer predominate over individual issues). The same common issues predominate here.

### 1. Common Questions Predominate about Whether Defendant's Label Was Deceptive to Reasonable Consumers.

As Plaintiffs established above, the central question in this case is common—whether Defendant's Fireball Malt label is misleading based on the objective "reasonable consumer" standard—and it will be answered by common proof. *See supra*, § III.A.2. With respect to this issue, "the predominance and commonality issues collapse." *Pettit*, 2017 WL 3310692, at *5. Thus, for Plaintiffs' UCL and FAL claims, Plaintiffs' showing necessarily establishes predominance. *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 407 (N.D. Cal. 2021) ("a plaintiff asserting a claim under either the UCL or FAL must show *only* that the question of likelihood of deception can be established with common proof in order to establish that common questions predominate over individual ones with respect to such claims.") (emphasis in original).[5]

### 2. Common Questions Predominate on Restitution and Damages.

Plaintiffs seek restitution under the UCL, as well as damages under the CLRA and for fraud, presenting further predominant common questions.[6] Pursuant to *Comcast v. Behrend*, 569 U.S. 27, 34

---

[5] With respect to Plaintiffs' remaining consumer fraud claims under the CLRA and common law, Plaintiffs also establish *infra* that common questions predominate as to materiality and reliance, which are not elements under the UCL or FAL. *Fitzhenry-Russell v. Pepper Snapple Grp. Inc.*, 326 F.R.D. 592, 611-14 (N.D. Cal. 2018) (certifying CLRA and common fraud claims where common question of deception and reliance could be resolved through common class-wide evidence); *Mullins*, 2016 U.S. Dist. LEXIS 51140, at *17 (certifying CLRA claims when deception and materiality were common questions that could be resolved on a class-wide basis).

[6] Under the UCL, a court may grant restitution, an equitable remedy whose purpose is "to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003); *see also Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 177 (2000); Cal. Bus. & Prof. Code §§ 17203, 17535. The form of restitutionary relief has two purposes: returning money unjustly taken from the class, and deterring the defendant from engaging in future violations. *See Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 695

(2013), Plaintiffs must show that damages are "capable of measurement" across the class and that their damages model "is consistent with [their] liability case." But Plaintiffs need not actually execute their model at the class certification stage. *See, e.g., Lytle v. Nutramax Labs., Inc.*, No. 22-55744, 2024 U.S. App. LEXIS 9722, at *18 (9th Cir. Apr. 22, 2024) ("[C]lass action plaintiffs may rely on an unexecuted damages model to demonstrate that damages are susceptible to common proof so long as the district court finds, by a preponderance of the evidence, that the model will be able to reliably calculate damages in a manner common to the class at trial."); *Bailey*, 338 F.R.D. at 408 n.14 (Plaintiff's experts are "not required to actually execute a proposed conjoint analysis to show that damages are capable of determination on a class-wide basis with common proof" "[a] plaintiff need only show that 'damages are capable of measurement' on a class-wide basis."); *see Maldonado v. Apple, Inc.*, 333 F.R.D. 175, 191–92 (N.D. Cal. 2019) (certifying consumer class because plaintiff presented a viable damages model and "[c]alculations need not be exact,' . . . nor is it necessary 'to show that [the] method will work with certainty at this time'"). Moreover, variations in damages among class members is not a reason to deny certification. *See Pulaski & Middleman, LLC v. Google, Inc*., 802 F.3d 979, 986 (9th Cir. 2015) ("damage calculations alone cannot defeat class certification") (citation omitted).

Here, Plaintiffs' damages expert, Dr. Ben-Akiva, proposes a conjoint damages model to show that everyone in the class paid a price premium for the Fireball Malt as a result of Defendant's deceptive representations. Ben-Akiva Decl., ¶¶ 10, 37–56; *see also Hadley*, 324 F. Supp. 3d at 1103–1110 (approving a conjoint analysis to measure a price premium from deceptive labels). Plaintiffs' theory of liability is that Defendant's Fireball Malt leads consumers to believe that the product is Fireball Whisky because the labels are substantially identical. ECF No. 49 ("FAC") ¶¶ 2–3, 17, 19. However, Fireball Malt is not Fireball Whisky. Instead of being whisky-based, Fireball Malt is malt-based (*id.* ¶ 17), and instead of being 33% ABV, Fireball Malt is 16.5% ABV (*id.*). Plaintiffs' proposed damages model will measure the amount that consumers would have paid if they were correctly informed about the nature of

---

(2006). If restitution is awarded, it must be a "quantifiable sum," and the award must be supported by substantial evidence. *Id.* at 698. Under the CLRA and fraud-based claims, a consumer may recover actual damages, punitive damages, and attorney fees. Cal. Civ. Code §§ 1780(a)(1), (4), (5). The CLRA also provides for statutory damages of $5,000 for each act of false advertising to a person age 65 or older. Cal. Civ. Code §§ 1761(f)–(g); 1780(b)(1).

the Fireball Malt. Indeed, Plaintiffs' model is supported by Defendant's own documents, which show ███

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████[7] *Id.* at Sazerac-CM_00015224. Accordingly, Plaintiffs' damages model is consistent with their theory of liability under *Comcast*, as numerous courts have recognized in other mislabeling cases. *See, e.g.*, *Testone v. Barlean's Organic Oils, LLC*, No. 19-CV-169 JLS (BGS), 2021 U.S. Dist. LEXIS 185896, at *44-45 (S.D. Cal. Sep. 28, 2021) (finding that courts "routinely" accept conjoint models measuring overpayment resulting from deceptive labeling); *Kumar*, 2016 U.S. Dist. LEXIS 92374, at *30–31 (accepting damages model which "isolate[s] a price premium"); *Hadley*, 324 F. Supp. 3d at 1104 ("It is well-established that the 'price premium attributable to' an alleged misrepresentation on product labeling or packaging is a valid measure of damages in a mislabeling case under the FAL, CLRA, and UCL.").

Conjoint analysis has been used for over 50 years by academic researchers, industry marketing departments, and government agencies to determine the price premium attributable to particular product attributes, such as product labeling. *Id*. Numerous courts, including this one, have also approved of conjoint analysis as a methodology to determine the price attributable to specific product features such as a label claim. *See In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2016 U.S. Dist. LEXIS 179487, at *49 (N.D. Cal. Sep. 14, 2016) (Chen, J.) (accepting conjoint analysis as an effective measure for restitution); *Bailey*, 338 F.R.D. at 408-10 (finding that conjoint comported with requirements of *Comcast* and was sufficient to show damages are capable of measurement on a class-wide basis); *Hadley*, 324 F. Supp. 3d at 1103 (finding conjoint analysis sufficient); *Krommenhock*, 334 F.R.D at 574–78 (N.D. Cal. 2020) (same); *see also, e.g.*, *In re Lenovo Adware Litig.*, No. 15-MD-02624-RMW, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016) (same); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 944 (C.D. Cal. 2015), *aff'd sub nom. Briseno*, 844 F.3d 1121, *and aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) (approving of methodology to determine class wide

---

[7] Common sense, in fact, suggests that consumers would pay half as much for half the ABV.

damages "attributable to ConAgra's labeling of Wesson Oils as '100% Natural' through the use of a conjoint analysis survey"). The survey here, designed by Dr. Ben-Akiva, accounts for the real-world marketplace for similar alcohol products, and will be based on actual, historical prices that occurred in the marketplace during the class period based on IRI data. Ben-Akiva Decl. ¶¶ 43, 54. Dr. Ben-Akiva will use actual competitor brands and actual price ranges for those competitors' products. *Id*. Following well-accepted techniques for conjoint surveys, respondents will be shown a variety of similar alcohol products that vary according to the product attributes tested: brand, product name, size, ABV, alcohol type (e.g., whisky vs malt), and price. *Id*. ¶¶ 43–47. Respondents will choose their preferred product based on the displayed attributes, which will be presented in sets of three or four products. *Id*. ¶¶ 42, 47–48. After each choice set, respondents will be asked how likely they are to purchase the product they state they preferred. *Id*. ¶ 48. Dr. Ben-Akiva will then be able to take the preference data and feed it into a market simulator that employs Hierarchical Bayesian regression to calculate the price premium that consumers paid as a result of Defendant's misleading label. *Id*. ¶¶ 52–53. Dr. Ben-Akiva will use retail sales data to calculate damages by multiplying the price premium by the sales of Fireball Malt during the class period. *Id*. ¶ 56. Because the price premium is expressed as a percentage or amount of the sales price that applies equally to every class member's purchase of Fireball Malt during the class period, damages are capable of measurement on a class-wide basis. *Id*. ¶¶ 10, 54–56; *see also Lytle*, 2024 U.S. App. LEXIS 9722, at *18 (damages need only be *capable* of measurement on a class-wide basis); *Gunaratna v. Dennis Gross Cosmetology LLC*, No. CV 20-2311-MWF (GJSx), 2023 U.S. Dist. LEXIS 60796, at *57 (C.D. Cal. Apr. 4, 2023) (collecting cases).

### 3.  Common Questions Predominate on Materiality.

Questions regarding the materiality of Defendant's deceptive practices also predominate.[8] Under California law, "[q]uestions of materiality and reliance are determined based upon the reasonable consumer

---

[8] Reliance and materiality are *not* elements of a UCL claim and are only relevant to Plaintiffs' common law fraud and CLRA claims. *Stearns*, 655 F.3d at 1020; *see also CF Gainesville Inv'r, LLC v. Astroenery Solar, Inc.*, No. 2:21-CV-02654-CAS, 2022 U.S. Dist. LEXIS 128188, at *14 (C.D. Cal. July 18, 2022) ("Under the fraudulent business practice prong of the UCL, none of the elements of a common law fraudulent deception claim, including that the deception must be 'reasonably relied upon by a victim who incurs damages' are required to state a claim.").

standard, not the subjective understandings of individual plaintiffs." *Kumar*, 2016 U.S. Dist. LEXIS 92374, at *21; *see also Stearns,* 655 F.3d at 1022; *Occidental Land, Inc. v. Superior Court*, 18 Cal. 3d 355, 363 (1976) (for common-law fraud class, reliance can be proven on common basis by showing that misrepresentations were material); *Vasquez*, 4 Cal. 3d at 814 (on fraud claim, "[i]f the court finds that a reasonable man would have relied upon the alleged misrepresentations, an inference of justifiable reliance by each class member would arise"); *In re Tobacco II Cases*, 46 Cal. 4th at 327 ("[a] misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or non-existence in determining his choice of action in the transaction' and as such materiality is generally a question of fact . . ."). Because materiality is an objective standard common to all, and classwide reliance is inferred upon showing materiality, this question predominates. Here, Plaintiffs' experts have proposed a consumer preference survey that will demonstrate that the alcohol content and alcohol base of Fireball Malt was of material importance to consumers in making their purchasing decision. Ben-Akiva Dec. ¶¶ 9, 34–36.

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████.[9] This demonstrates that this additional common question is capable of resolution using common evidence.

Defendant will likely argue that consumers had different motivations that led to their purchases, but this is irrelevant because the theory of the case is that the misrepresentation affected the retail *market price*, so all class members paid the price premium regardless of motivation. *See, e.g.*, *Kumar*,  2016 U.S. Dist. LEXIS 92374, at *25 (noting that in a "price premium" case "materiality and reliance do not break down into individualized inquiries, but can be determined on a classwide basis."); *Brown,* 2014 WL 6483216, at *17 (certifying a class even though consumers "buy products all the time for more than one reason"); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 668 (C.D. Cal. 2014) (rejecting evidence that consumers had different primary motivators for purchasing product and finding predominance).

---

[9] The CLRA and common law fraud claims present the further common question of whether Defendant intended to deceive consumers. ████████████████████████████████

Likewise, hypothetically different consumer buying experiences do not defeat certification of the CLRA or fraud-based claims. On those claims, an inference (or presumption) of reliance arises as to the entire class if the misrepresentation was uniform and material. *See In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 156 (plaintiff entitled to show that defendant's conduct caused the same damage to the class by showing the misrepresentation was material, even if defendant could show some class members would have bought the product anyway); *Wolph v. Acer Am. Corp.*, 2012 WL 993531, *3 (N.D. Cal. Mar. 23, 2012) ("[T]he Court found that Plaintiffs' claims are premised on misrepresentations that were made to the entire class. Therefore, common issues predominate on Plaintiffs' CLRA claim."); *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 594 (C.D. Cal. 2011) (similar); *Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113, *10 (N.D. Cal. June 7, 2011) (similar); *In re Brazilian Blowout Litig.,* 2011 WL 10962891, *8 (C.D. Cal. Apr. 12, 2011) (similar).

### 4.  Common Questions Predominate on Punitive Damages.

Common questions also predominate regarding whether Plaintiffs and the class are entitled to punitive damages. Under the CLRA, Plaintiffs and the class are entitled to punitive damages because Defendant acted with "oppression, fraud, or malice." *Robinson v. J.M. Smucker Co.*, No. 18-cv-04654-HSG, 2019 U.S. Dist. LEXIS 78069, at *17 (N.D. Cal. May 8, 2019) (CLRA provides punitive damages in cases of "oppression, fraud, or malice") (quoting Cal. Civ. Code § 3294); *see also* Cal. Civ. Code § 1780. Fraud means an "intentional misrepresentation, deceit, or concealment of a material fact knowing to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights." Cal. Civ. Code § 3294(c)(3). "Because the purpose of punitive damages is not to compensate the victim, but to punish and deter the defendant, any claim for such damages hinges, not on facts unique to each class member, but on the defendant's conduct toward the class as a whole." *Barefield v. Chevron, U.S.A., Inc.*, No. C 86-2427 TEH, 1988 WL 188433, at *3 (N.D. Cal. Dec. 6, 1988). Here, the issue of whether Defendant's senior officers, including ████████ other executives, released Fireball Malt in California with fraudulent intent is a common question that can be determined through common evidence, including emails showing ████████████████████████████████████ *See, e.g.*, Pls.' Ex. 21 at Sazerac_00119482; Pls.' Ex. 17 at Sazerac-CM_00096968; *see also Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 542–43 (N.D. Cal. 2012) (Chen,

1  J.) (availability of punitive damages, as opposed to the amount of any award, was best decided on a

2  classwide basis.).

### 5.   A Class Action Is Superior.

Rule 23(b)(3) enumerates four factors to consider on "superiority": "(A) the interest of members
of the class in individually controlling the prosecution . . . of separate actions; (B) the extent and nature
of any litigation concerning the controversy already commenced by . . . members of the class;[10] (C) the
desirability . . . of concentrating the litigation of the claims in the particular forum; (D) the difficulties
likely to be encountered in the management of a class action."

There is little to be gained by class members filing individual claims, because the amounts
charged per purchase were generally low amounts relative to the costs of litigation. Judicial resources
would be conserved by concentrating the action in a single suit. Finally, the adjudication of class claims
would not be significantly more burdensome than if the matter were prosecuted individually, while the
prosecution of individual remedies could establish inconsistent standards of conduct for Defendant. "[A]
class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no
litigation at all." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

### C.   The Class Also Satisfies the Requirements of Rule 23(b)(2).

Plaintiffs have met their burden for certification of their claims pursuant to Rule 23(b)(3). They
have demonstrated that common issues predominate over individual issues as to their claims and have
proposed a damages model consistent with their theory of liability in accordance with *Comcast*. However,
even if they had not, Rule 23(b)(2) provides a separate and additional basis for granting Plaintiffs' motion.
The UCL provides Plaintiffs and the Class with a statutory right to enjoin Defendant's deceptive conduct.
*McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017) (explaining that an injunction is "the primary form of
relief available under the UCL to protect consumers from unfair business practices."); Bus. & Prof. Code
§ 17203. Further, Rule 23(b)(2) permits certification where the Rule 23(a) prerequisites are satisfied and a
defendant "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief

---

[10] There are no other actions pending by members of the proposed Class. However, there is a similar action
regarding Fireball Malt in the Southern District of New York on behalf of New York consumers that is still
at the motion to dismiss stage. *In re: Sazerac Consumer Litigation*, 7:23-cv-02751 (S.D.N.Y.).

or corresponding declaratory relief is appropriate respecting the class as a whole" and is available without the need to establish predominance or a damages model. *Wal-Mart Stores, Inc.*, 564 U.S. at 362–63. Class certification under Rule 23(b)(2) is appropriate "even if some class members have not been injured by the challenged practice." *Walters v. Reno,* 145 F.3d 1032, 1047 (9th Cir. 1998).

Here, Defendant continues to sell Fireball Malt with an objectively deceptive label. Pursuant to the UCL, Plaintiffs seek to enjoin Defendant from using a label that is substantially identical to the label for Fireball Whisky. To date, Defendant has refused to change the Fireball Malt label with respect to the Class as a whole, i.e., it offers no individual labels for any individual members of the Class. Thus, Plaintiffs meet the requirements for a Rule 23(b)(2) class, which the Court must certify for purposes of seeking injunctive relief under the UCL. *Bush v. Rust-Oleum Corp.*, No. 20-cv-03268-LB, 2024 U.S. Dist. LEXIS 20131, at *18 (N.D. Cal. Feb. 5, 2024) (certifying Rule 23(b)(2) injunctive relief class of purchasers of Rust-Oleum's Krud Kutter cleaning products that were allegedly falsely labeled as "non-toxic" and "Earth friendly); *Tran v. Sioux Honey Ass'n, Coop.*, No. 8:17-cv-00110-JLS-SS, 2020 U.S. Dist. LEXIS 31421, at *21 (C.D. Cal. Feb. 24, 2020) (similar).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion for Class Certification.

Dated: May 21, 2024          **GUTRIDE SAFIER LLP**

                                     */s/ Rajiv V. Thairani /*
                                     Seth A. Safier, Esq.
                                     Rajiv V. Thairani, Esq.
                                     100 Pine Street, Suite 1250
                                     San Francisco, CA 94111

                                     Attorneys for Plaintiffs